IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                      Case Nos.:        4:11cr37/RH/CAS
                                                          4:18cv489/RH/CAS

MELCHOR MUNOZ,
        Defendant.

---

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Melchor Munoz's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

(ECF No. 593.)   The Government has responded in opposition and Munoz

has filed a reply.   (ECF Nos. 599, 605.)   The case was referred to the

undersigned for the issuance of all preliminary orders and any

recommendations to the district court regarding dispositive matters.    *See*

N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.

72(b).   The court recommends that the § 2255 motion be denied without

an evidentiary hearing as untimely.    *See* Rules Governing Section 2255

Cases 8(a) and (b).

## BACKGROUND

Melchor Munoz, who is originally from Mexico, became a naturalized United States citizen in September of 2009.[1]   On June 7, 2011, a grand jury returned an indictment charging that "between on or about January 1, 2010, and on or about May 30, 2011" Munoz and others were involved in a conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine and one hundred kilograms or more of marijuana.   (ECF No. 46.)   The second superseding indictment, returned on October 4, 2011, expanded the dates of the conspiracy to between "on or about June 1, 2008, and on or about May 30, 2011."   (ECF No. 202.)

Munoz, represented by attorney Clyde Taylor, Esq., pleaded guilty to "the charge in the Indictment"[2]  pursuant to a written plea agreement on April 9, 2012.   (ECF Nos. 320-322.)[3]   The plea agreement contains a provision acknowledging that Munoz "understands that this conviction may

---

[1] There are several naturalization dates offered in the record, but for the purpose of this proceeding, the court accepts the date identified in an official letter from the Department of Justice. (*See* ECF No. 599-1; ECF No. 587 at 18: ECF No 425, PSR ¶ 61.)

[2] The plea agreement does not specify that the plea is to the second superseding indictment.   (*See* ECF No. 321.)

[3] The Statement of Facts also mentions "gallon zip-lock bags of methamphetamine" although the indictment charges only marijuana and cocaine.   (ECF No. 320 at 5.)

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

adversely affect [his] immigration status and may lead to revocation of his

citizenship and deportation."   (ECF No. 321 at 3.)

Munoz was placed under oath at the plea proceeding.   Upon the

court's inquiry, Munoz stated that he started "getting and reselling"

marijuana in late 2008, and he did not become involved with cocaine until

the end of 2010.   (ECF No. 587 at 9.)   He admitted having sold more than

five kilograms of cocaine and at least 100 kilograms of marijuana

throughout the conspiracy.   (*Id.* at 10-11.)   Munoz admitted having signed

the plea agreement, which had been translated for him word-by-word, and

that he understood and agreed to every word.   (*Id.* at 16.)   The

Government brought the court's attention to the potential immigration

consequences of Munoz's plea.   It noted that Munoz was naturalized in

2009, and stated:

> The law provides that, if someone was engaged in criminal
> activity and thus not of good moral character as they professed
> when becoming a citizen, that that (sic) citizen is subject to
> revocation.
>
> So one of the potential consequences of this plea of guilty is
> that the Government may seek to revoke Mr. Munoz's
> citizenship and have him deported at the conclusion of his
> sentence.   The decision has not been made whether or not to
> do that, but that is a possibility in this case.

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

(ECF No. 587 at 18.)   Mr. Taylor then assured the court that the matter

"was reviewed in detail and discussed with my client," and he did not know

"why it's coming up at this point."   (*Id.* at 19.)   The Government explained

that "people sometimes complain about it afterwards."   (*Id.*)   The court

addressed Munoz as follows:

> I am not a judge who deals with citizenship matters.   So I will
> have nothing to do with the question of whether this case has
> any effect on your citizenship status.   What I want you to
> understand is—well, just what I told you, I'm not the judge that
> deals with this.   This could have an effect on your citizenship
> status.   I don't know that it will; I don't know that it won't.   I just
> want to make sure that nobody has made any promises to you
> about whether or not this will affect your citizenship status.
>
> So, do I have that right?   Has anybody made any promises to
> you one way or the other on that subject?

(ECF No. 587 at 19-20.)   Munoz responded "no."   When the court

asked him how he wished to plead in the case, he affirmed his desire

to plead guilty.

The Second Final Presentence Investigation Report ("PSR")

determined Munoz had a total offense level of 36 and a criminal history

category of I.   (ECF No. 425.)   The applicable advisory guidelines range

was 188 to 235 months of imprisonment.   The PSR reflects Munoz told the

probation officer he became a naturalized United States Citizen in 2010.

(PSR ¶ 61.)

On July 27, 2012, the court sentenced Munoz at the bottom of the

applicable advisory guidelines range to 188 months of imprisonment

followed by five years of supervised release.    (ECF Nos. 450, 451, 586.)

Judgment was entered on August 3, 2012, and Munoz did not appeal.    On

September 21, 2016, the court reduced his sentence to a term of 151

months' imprisonment pursuant to U.S.S.G. Amendment 782.    (ECF No.

556.)

Munoz filed nothing further until filing the instant § 2255 motion,

through counsel, on October 29, 2018.    The Government contends that the

motion is untimely and without merit.

## ANALYSIS

Title 28 U.S.C. § 2255(f) imposes a one-year time limitation on the

filing of motions under this section.    Relevant to this action, the one-year

period of time runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>  . . .   or
> (4) the date on which the facts supporting the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2255(f).   Munoz contends that his motion is timely pursuant to § 2255(f)(4) because it was filed within one year from the date the Government filed a complaint to revoke his naturalization pursuant to 8 U.S.C. § 1451(a), July 26, 2018.   *See United States v. Munoz*, Case No. 4:18cv351/MW/CAS, ECF No. 1 (ECF No. 593-1 in this case.)   He avers that until receiving the denaturalization complaint and discussing it with counsel, he had not been aware that counsel's pre-plea advice about the deportation consequences of his conviction was erroneous.   (ECF No. 593 at 11.)

The one-year statute of limitations period under § 2255(f)(4) runs not from the date on which the facts supporting a defendant's claim were discovered, but on the date they could have been discovered through the exercise of due diligence.   28 U.S.C. § 2255(f)(4); *Aron v. United States*, 291 F. 3d 708, 711 (11th Cir. 2002).   The beginning of the limitation period is thus triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts.   *Id.*   Due diligence requires reasonable efforts.   It does not require a defendant to "undertake repeated exercises in futility or to exhaust every imaginable option."   *Id.* at

712.   An allegation that the defendant "did not actually know the facts

underlying his or her claim" does not establish that the facts could not have

been discovered through due diligence.   *In re Boshears*, 110 F. 3d 1538,

1540 (11th Cir. 1997).   It is a petitioner's burden to prove he exercised due

diligence in discovering the facts underlying his claim.   *Melson v. Allen*,

548 F. 3d 993, 999 (11th Cir. 2008) (vacated on other grounds).   Prompt

action by the petitioner as soon as he is in a position to realize an issue is

one way to show diligence.   *Johnson v. United States*, 544 U.S. 295, 308

(2005).

The Government asserts that Munoz could have discovered his claim

with reasonable diligence either in 2012, around the time he entered his

plea, or no later than September of 2017, when he received written notice

of the U.S. Department of Justice's intent to bring denaturalization

proceedings against him.

The Government has submitted a copy of the September 25, 2017,

letter to Munoz from the U.S. Department of Justice indicating the DOJ

intended to seek denaturalization because it believed Munoz had illegally

obtained his citizenship.   (ECF No. 599-1 at 1.)   The letter thoroughly sets

forth the basis for the Government's position, explaining Munoz could not

establish the requisite good moral character mandated by 8 U.S.C. §

1427(a) when he filed out his Application for Naturalization, when he was

interviewed by the Department of Homeland Security, and when he was

sworn in as a United States Citizen, both because of his guilty plea to drug

distribution charges for the time period between June 1, 2008, and May 30,

2011, and because he provided false answers under oath about his

criminal history.   The letter offered Munoz the opportunity to "settle the

case prior to the commencement of the denaturalization proceedings" and

provided a contact email address for the authoring attorney.

On October 26, 2017, just over a year before Munoz filed his § 2255

motion, the legal assistant to immigration attorney Neil St. John Rambana,

Esq. sent the DOJ an email to the email address provided in the letter

indicating that "we are now the attorney of record" and requesting any

further matters to be forwarded to their attention.   (ECF No. 599-2.)   Ari

Nazarov, Esq., who authored the letter from the DOJ, confirmed receipt of

the email and indicated he was available to talk to Mr. Rambana the

following week.   The Government has also submitted evidence that

Munoz's current post-conviction attorney, who has litigated a similar claim

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

in this court,[4] ordered transcripts from Munoz's 2012 sentencing and

change of plea hearings on November 11, 2017, and February 2, 2018,

respectively.   (ECF No. 599-3; *see also* ECF No. 586 (docketed December

4, 2017); ECF No. 587 (docketed March 15, 2018).)   As noted above, the

Government's civil action to revoke Munoz's citizenship was filed on July

26, 2018, and the § 2255 motion was filed on October 29, 2018.

---

[4] In the case of *United States v. Il Hwan Choi,* 4:08cr5/RH/WCS, Choi, through attorney
Ufferman, filed a § 2255 motion alleging that his attorney provided constitutionally
deficient advice about the immigration consequences of his guilty plea.   According to
the motion, which was filed a mere two months after the entry of judgment, Choi was
very concerned about deportation and consulted with immigration attorney Neil St. John
Rambana after entering his plea.   Mr. Rambana advised Choi that his case would most
likely result in deportation proceeedings.   Choi's appointed trial counsel had told him,
based on advice from an agent of the U.S. Immigration and Customs Enforcement, that
Choi would not be deported as a result of his conviction.   After holding a hearing on the
motion, the district court found appointed counsel was ineffective because he relied on
what the ICE agent told him instead of reading the applicable statute himself.   The
court also pointedly distinguished being told that something *could* happen with being
told that something *would* happen.   (*See* Case 4:08cr5/RH/WCS, ECF No. 96 at 52
"Well, I know every time that I get on an airplane that it could crash, but if you tell me it's
going to crash, I'm not getting on.")   Choi, who originally pleaded guilty to conspiracy to
transport, harbor, and induce illegal aliens and was sentenced to a term of nine months'
imprisonment, was re-indicted and later pleaded guilty to hiring illegal aliens, which was
not a deportable offense.   Choi situation is distinguishable from that presented in this
case because Choi exercised due diligence in seeking counsel from an immigration
attorney after entering his plea and promptly filed a § 2255 motion.   It is also
distinguishable because Choi was later able to plead to an offense that would not
subject him to deportation.   Counsel repeats many of the same arguments he made in
Choi's case in 2008.   He offers no plausible reason that, considering the nature and
size of the conspiracy in this case, as well as Munoz's admissions during the plea
colloquy, that Munoz could have "resolve[d] the case with a plea to an offense that
would not require his citizenship to be revoked."   (ECF No. 593 at 9; *see also* ECF No.
607 at 2 noting that, pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) drug offenses except for the
most insignificant marijuana offenses are deportable.)

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

The undersigned concurs that Munoz was placed on notice about the possibility that his conviction would adversely affect his citizenship in multiple ways.   He was advised by Mr. Taylor before he entered his plea that a guilty plea "could" affect his citizenship.   (ECF No. 593-2, ¶ 5.)   The written plea agreement stated that the conviction "may lead to revocation of his citizenship."   (ECF No. 321 at 3.)   The Government explained during the plea proceeding that a "potential consequence of the plea" was that the Government "may seek to revoke Mr. Munoz's citizenship," while suggesting, however, that the decision to do this was discretionary, because the decision had not been made.   (ECF No. 587 at 18.)   Finally, there was the September 25, 2017 DOJ letter which prompted Munoz to hire an immigration attorney who had provided advice to another defendant in this court in 2008.

Munoz responds to the Government's suggestion of untimeliness by stating that before the Government filed the complaint to revoke his naturalization, he "was on notice only that his guilty plea 'could' affect his citizenship--not that the guilty plea 'would/will' affect his citizenship."   (ECF No. 607 at 2.)   There is no evidence that he made any attempt to investigate what this meant at the time of his plea.   Furthermore, his

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

position ignores the plain language of the 2017 letter from the DOJ stating
that: (1) the Government "plans to bring denaturalization proceedings"
against him; (2) Munoz had the opportunity to settle the case before
proceedings commenced, but any settlement, at a minimum, had to include
Munoz giving up his United States citizenship; and (3) if the DOJ did not
hear from Munoz or his attorney by October 25, 2017 it would begin
denaturalization proceedings.   (ECF No. 599-1.)

The date the denaturalization petition was filed is irrelevant to the
determination of timeliness pursuant to § 2255(f)(4), because the facts
underlying his ineffective assistance of counsel claim could have been
discovered through the exercise of due diligence, in 2012, or at the latest
upon the receipt of the DOJ's letter.   *See McMillar v. United States*, Case
19-13982-A, 2019 WL 7554491 (11th Cir. Dec. 23, 2019) (citing *Aron*, 291
F. 3d at 712).   Munoz's motion should be denied as untimely.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings
provides that "[t]he district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant," and if a
certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 593) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 12th day of March, 2020.

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 4:11cr37/RH/CAS; 4:18cv489/RH/CAS