**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


UNITED STATES OF AMERICA

v.                                          CASES NO. 4:11cr37-RH-MAF
                                                           4:18cv489-RH-MAF

MELCHOR MUNOZ,

                  Defendant.

_____/


**ORDER DENYING THE § 2255 MOTION AND
GRANTING A CERTIFICATE OF APPEALABILITY**


In this criminal case, the defendant Melchor Munoz pled guilty to a drug

trafficking offense. He is a naturalized United States citizen. In a separate case, the

government is seeking to revoke Mr. Munoz's citizenship based on both the

underlying conduct—the drug trafficking—and the resulting conviction.

Mr. Munoz has moved for relief from the conviction under 28 U.S.C.

§ 2255. He asserts his attorney rendered ineffective assistance—that the attorney

provided incorrect advice on the citizenship consequences of a guilty plea. Mr.

Munoz says the plea was involuntary because it was based on a misunderstanding

of the citizenship consequences.

The § 2255 motion is before the court on the magistrate judge's report and recommendation, which concludes the motion is untimely. This order concludes the motion is timely but unfounded on the merits: the attorney's advice was not incorrect, and Mr. Munoz acknowledged at his plea proceeding that he understood—accurately as it turns out—that his conviction might or might not lead to revocation of his citizenship.

## I. Naturalization

On June 6, 2009, Mr. Munoz applied to become a United States citizen. As part of the application, signed under penalty of perjury, he said he had never sold illegal drugs or committed any offense for which he had not been arrested. In an interview on July 6, 2009, Mr. Munoz again said, after being sworn, that he had never sold illegal drugs. On September 8, 2009, Mr. Munoz submitted a statement under oath that he had not illicitly trafficked in drugs or committed any offense since his interview. On that same day, September 8, Mr. Munoz took the oath and became a citizen.

As it turns out, Mr. Munoz's statements were false. He was actively engaged in the distribution of marijuana starting in late 2008. The record establishes this without dispute. On July 26, 2018, the government filed a complaint in a separate proceeding in this court seeking to revoke Mr. Munoz's citizenship.

## II. The Criminal Case

On June 7, 2011, a grand jury indicted Mr. Munoz and others on a single count: conspiring between January 1, 2010 and May 30, 2011 to distribute and possess with intent to distribute cocaine and marijuana. ECF No. 46. A superseding indictment added defendants but did not change the dates of the alleged conspiracy. ECF No. 83. A second superseding indictment expanded the dates, now alleging a conspiracy between June 1, 2008 and May 30, 2011. ECF No. 202.

Mr. Munoz pled guilty on April 9, 2012. He signed a plea agreement that included this statement: "The Defendant understands that this conviction *may* adversely affect the Defendant's immigration status and *may* lead to revocation of his citizenship and deportation." ECF No. 321 at 3 (emphasis added). At the plea proceeding, during which Mr. Munoz was under oath, the government's attorney addressed the possible effect of the guilty plea on Mr. Munoz's citizenship:

> Mr. Munoz is a nationalized citizen of the United States, originally from Mexico. Mr. Munoz was nationalized, I believe, in October of 2009. The law provides that, if someone was engaged in criminal activity and thus not of good moral character as they professed when becoming a citizen, that that citizen is subject to revocation.
>
> So one of the *potential* consequences of this plea of guilty is that the government *may* seek to revoke Mr. Munoz's citizenship and have him deported at the conclusion of his sentence. *The decision has not been made whether or not to do that, but that is a possibility in this case*.

ECF No. 587 at 18 (emphasis added). Mr. Munoz's attorney responded that this was in the plea agreement and "was reviewed in detail and discussed with my client." *Id*. at 19.

> I followed up, making sure Mr. Munoz understood:

>> I am not a judge who deals with citizenship matters. So I will have nothing to do with the question of whether this case has any effect on your citizenship status. What I want you to understand is -- well, just what I told you, I'm not the judge that deals with this. This *could* have an effect on your citizenship status. *I don't know that it will; I don't know that it won't*. I just want to make sure that nobody has made any promises to you about whether or not this will affect your citizenship status.

*Id*. at 19-20 (emphasis added). Mr. Munoz confirmed that nobody had made any promises to him on this subject. *Id*. at 20.

After this exchange, Mr. Munoz pled guilty. He was sentenced on July 27, 2012, to 188 months in prison, the low end of the guideline range. He did not appeal. Based on United States Sentencing Guidelines Amendment 782, the sentence was later reduced to 151 months. Mr. Munoz is serving that sentence.

## III. The § 2255 Motion

Mr. Munoz filed the instant § 2255 motion—his first—on October 29, 2018. He says his attorney's advice on citizenship was incorrect—that revocation of citizenship based on the conviction was not just possible, as the attorney said, but mandated by law and thus certain. If that is correct—if revocation was

mandatory—then the government's attorney also provided incorrect information at the plea proceeding, saying revocation was possible and that no decision on whether to seek revocation had been made. And likewise, if revocation was mandatory, my statement to Mr. Munoz at the plea proceeding was incorrect or at least incomplete; I said only that revocation "could" have an effect on his citizenship status.

Mr. Munoz says he would not have pled guilty had he known revocation of citizenship would be mandatory. He seeks relief on the ground that his attorney rendered ineffective assistance by providing incorrect advice on this subject and that the plea was involuntary because it was based on an incorrect understanding of the plea's effect on citizenship.

## IV. Statute of Limitations

A § 2255 motion must be brought within a one-year limitations period. The period runs from the latest of four possible triggers. *Id*. The trigger that applies in this case is "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

This order analyzes the limitations issue on the assumption that Mr. Munoz is correct on the merits—that revocation is mandatory based on the criminal

conviction. Whether that assumption is indeed correct—that is, whether Mr. Munoz is right on the merits—is addressed in the next section of this order.

By letter dated September 25, 2017, the government notified Mr. Munoz of its intent to bring a revocation proceeding. On October 26, 2017, an immigration attorney gave the government notice of his representation of Mr. Munoz. The government says that with diligence Mr. Munoz could have discovered that revocation was mandatory based on the September 25 letter. Indeed, the government says Mr. Munoz *did* recognize this, as shown by his retention of an immigration attorney. This occurred more than one year before October 29, 2018, the date on which the § 2255 motion was filed. The magistrate judge entered a report and recommendation accepting this argument and concluding the § 2255 motion is untimely.

The flaw in the argument is this. The September 25, 2017 notice indicated only that the government intended to seek revocation, not that this was mandatory. Mr. Munoz was told at the plea proceeding in 2012 that the government might seek revocation; his complaint now is not that the government *could* do this, but that the government *was required* to do this. Nothing in the September 25 notice indicated a revocation proceeding was mandatory rather than discretionary. So nothing in the September 25 notice informed Mr. Munoz of the "facts supporting the [current] claim." 28 U.S.C. § 2255(f)(4).

Nor does the record indicate that the retention and appearance of an immigration attorney provided immediate notice to Mr. Munoz that revocation was mandatory. Attorneys, even good ones with expertise in a particular area, often must do research to determine the law applicable in specific circumstances. Mr. Munoz's attorney had dealt with a similar case in this court, *United States v. Choi*, 581 F. Supp. 2d 1162 (N.D. Fla. 2008), but that case involved not revocation of citizenship but removal of a noncitizen—a markedly different issue governed by different statutory provisions. The record does not indicate that with diligence Mr. Munoz could have learned from the immigration attorney by October 29, 2017—a date one year before he filed the § 2255 motion—that the information given Mr. Munoz in connection with the guilty plea was incorrect.

That the limitation period runs from the date when Mr. Munoz knew or should have known the information was wrong is consistent with *Gonzalez v. United States*, No. 19-11182 (11th Cir. Nov. 20, 2020). There an alien defendant filed a coram nobis petition challenging a guilty plea entered in reliance on incorrect advice that the plea would not be a basis for deportation. The court held the timeliness of the petition should be analyzed from, at the latest, the date when the defendant knew the advice was wrong. The petition was filed 20 months after that date and thus was untimely. Here, in contrast, the delay from the date when

Mr. Munoz knew or should have known the advice he received was wrong was less than the one-year limitations period.

In sum, the record does not show that the § 2255 motion is barred by the statute of limitations.

## V. Merits

The record leaves little doubt about what Mr. Munoz was told when he decided to plead guilty—by his attorney, by the government's attorney, and by the court. He was told the conviction *could* lead to revocation of his citizenship, not that it necessarily *would* lead to revocation. Indeed, he was told by the government's attorney that no decision about this had yet been made.

Mr. Munoz now says this was wrong—that the conviction left the government no discretion but instead mandated revocation. Properly analyzed, the contention raises two questions: first, is revocation mandatory when a conviction establishes that the defendant engaged in drug trafficking during the relevant period; and second, does this conviction establish that Mr. Munoz engaged in drug trafficking during that period. The answer to the first question may be unclear. The answer to the second question is no, and this is fatal to Mr. Munoz's claim.

### A. *Is Revocation Mandatory*

An applicant for citizenship must be "of good moral character" during the relevant period, that is, from five years before the citizenship application to the

date of naturalization. *See* 8 U.S.C. § 1427(a)(3). After an application is granted—
that is, after a person becomes a naturalized citizen—the person's citizenship may
be revoked on a showing that the person was not in fact a person of good moral
character during the relevant period. *See* 8 U.S.C. § 1451(a); 8 C.F.R. § 316.10(b).
And the person's citizenship may be revoked on a showing that the person made a
material misrepresentation in connection with the application. *See* 8 U.S.C.
§ 1451(a); 8 U.S.C. § 1101(f)(6).

Mr. Munoz says, and has filed the declaration of a well-qualified
immigration attorney averring, that a naturalized citizen "who is convicted of a
controlled substance offense that occurred prior to naturalization *will have* his
citizenship revoked." ECF No. 593-3 at 2 (emphasis in original). For this, the
attorney cites only 8 U.S.C. § 1451 and 8 C.F.R. § 340.2. Neither clearly directs
the government to seek revocation in every case meeting the statutory criteria.

Under 8 C.F.R. § 340.2(a), the United States Citizenship and Immigration
Service ("USCIS") "will make a recommendation regarding revocation" when it
"appears" that naturalization was procured illegally or by willful misrepresentation
or concealment of a material fact. At least on its face, this does not make clear
whether the recommendation must be to pursue revocation or whether, instead, the
recommendation may come out on either side, that is, to pursue or not to pursue
revocation.

Under 8 U.S.C. § 1451(a), it "shall be the duty" of the United States Attorney in the relevant district to institute a revocation proceeding "upon affidavit showing good cause therefor." If § 340.2(a) requires USCIS to pursue revocation and USCIS provides the United States Attorney an affidavit showing good cause, § 1451(a) may require the United States Attorney to go forward. At least one court has suggested, though, that here, as elsewhere, a United States Attorney retains prosecutorial discretion. *See United States v. Clarke*, 628 F. Supp. 2d 1, 11 (D.D.C. 2009). This is consistent with the general rule that government agencies have discretion whether to bring enforcement proceedings even in the face of "seemingly mandatory legislative commands." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005); *see also Heckler v. Chaney*, 470 U.S. 821, 835 (1985).

In sum, USCIS and a United States Attorney might or might not be obligated to seek to revoke the citizenship of a person convicted of drug trafficking that occurred during the relevant period prior to naturalization. Put differently, revocation in these circumstances might or might not be mandatory as Mr. Munoz now contends; reasonable jurists could disagree on this. And so an attorney providing effective assistance might well advise a defendant that revocation is possible, even likely, but not necessarily certain. A court taking a plea might well tell a defendant the same thing.

### B. Is This Conviction Disqualifying?

Even if USCIS and the United States Attorney must seek revocation when grounds are shown—that is, even if revocation is mandatory—Mr. Munoz's § 2255 motion presents an additional question: did this conviction, standing alone, establish grounds for revocation? The answer is no.

With exceptions not relevant here, a person is, by statutory definition, not "of good moral character" if any one of these three things is true: the person has been convicted of a drug-trafficking offense; the person has admitted committing a drug-trafficking offense; or the person has engaged in a drug-trafficking offense. 8 U.S.C. § 1182(a)(2)(A)(i)(II), (C)(i).

The relevant period is from five years prior to the application for citizenship to the date of naturalization. For Mr. Munoz, that period is from June 6, 2004 to September 8, 2009. Mr. Munoz's citizenship thus can be—perhaps must be— revoked if any of these three things is true: he was convicted of a drug-trafficking offense committed between June 6, 2004 and September 8, 2009; he admitted committing a drug-trafficking offense during that period; or he was engaged in drug trafficking during that period.

The second superseding indictment charged Mr. Munoz with conspiring to distribute and possess with intent to distribute cocaine and marijuana between June 1, 2008 and May 30, 2011. His guilty plea and resulting conviction establish that he committed this offense—that he was a member of the charged conspiracy—at

some time within that period. The plea and conviction do *not* establish that Mr.

Munoz's involvement began on or before September 8, 2009. So the plea and

conviction, without more, do not establish that Mr. Munoz's citizenship may be

revoked.

That a charge and conviction do not always line up is well illustrated by this

case. Nothing in the record suggests Mr. Munoz was engaged in drug trafficking as

early as June 1, 2008, the start date alleged in the indictment. Instead, during the

plea colloquy, Mr. Munoz said he did not begin trafficking in cocaine until 2010.

He said he began trafficking in marijuana in late 2008—but he volunteered this

information without being asked, and it was not essential to the conviction. *See*

ECF No. 587 at 9.

In sum, Mr. Munoz's conviction, without more, does not provide a basis for

revocation of his citizenship. The government will prevail in the separate

revocation proceeding only by showing that Mr. Munoz was in fact engaged in

drug trafficking during the relevant period or that he admitted it. As it turns out,

Mr. Munoz admitted it during the plea colloquy. But his attorney could not have

told him in advance that the conviction would make revocation mandatory—

because it would not. The government's statement that the conviction might or

might not lead to revocation was correct. So was my statement during the plea

colloquy.

The proper course, under these circumstances, was to handle this as it was handled—to tell Mr. Munoz that the citizenship consequences of the plea would not be determined in the criminal case, and that the conviction might or might not lead to revocation. Mr. Munoz said he understood this. He pled guilty anyway, probably because the government was prepared to prove his guilt at the imminently scheduled trial.

## VI. Certificate of Appealability

A defendant may appeal the denial of a § 2255 motion only if the district court or court of appeals issues a certificate of appealability. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (setting out the standards applicable to a § 2254 petition on the merits). As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4).

Mr. Munoz has made the required showing. This order thus grants a certificate of appealability.

## VII. Conclusion

Mr. Munoz's challenge to his conviction is timely but unfounded on the merits. Even so, reasonable jurists could disagree. Accordingly,

IT IS ORDERED:

1. The report and recommendation, ECF No. 608, is accepted but on different grounds.

2. The § 2255 motion, ECF No. 593, is denied on the merits.

3. The clerk must enter judgment.

4. A certificate of appealability is granted on this issue: whether Mr. Munoz is entitled to relief on the ground that his attorney, the government, and the court told him at the time of his guilty plea that the resulting conviction might, not that it necessarily would, lead to revocation of his citizenship.

SO ORDERED on November 23, 2020.

s/Robert L. Hinkle
United States District Judge